Good morning, Your Honors. I may please the Court. Amy McKenfill on behalf of the defendants appellants. Your Honors, this Court should reverse and grant summary judgment to Detector Friedman on plaintiff's false arrest and malicious prosecution claims on qualified immunity grounds. Your Honor, the magistrate judge made a few correct determinations about probable cause and then incorrectly applied the law. The magistrate judge correctly determined that a reasonable person could find probable cause existed here based on the totality of the evidence. We have the witness's statement, excuse me, the complainant's statement, her video that she took of the plaintiff, we have her identification of him in a photo array and lineup, and the surveillance video from the MTA bus which corroborated in large part her account. So can I ask, at what point does a witness or a victim's testimony cease to be a reliable basis for arguable or actual probable cause, and how would we draw that line? Sure, Your Honor. And this really gets to the crux of the magistrate judge error here because... And he's now district judge. I'm sorry. And he's now district judge. Okay, excuse me. The decision below, the error in the decision below, the magistrate judge... He was acting as a district judge even when he was a magistrate judge, right? I think the parties agreed that he could resolve the dispositive motion, yes. So there is lines in some of this Court's decisions that recognize that in some instances there could be circumstances that give doubt to a complainant or witness's credibility so as to vitiate a probable cause. But the boundaries of that... A witness could be so unreliable that, and the test would be that no reasonable police officer would have believed her? For arguable probable cause, yes, that's right, Your Honor. And here, certainly, we don't cross that line. There were substantial inconsistencies here, including, for example, she said he followed me for three blocks when it's clear that he got back on the bus. That was a collateral discrepancy because it didn't actually get... Well, it's pretty significant whether it's collateral or not, right? He followed me for three blocks versus he went back on the bus. Detective Friedman explained why he did not assess that as undermining her credibility. He understood that in that... And could a reasonable police officer overlook that significant discrepancy? Well, there could... Different people could interpret it different ways, and that's precisely what the magistrate judge found. There could be a reasonable difference of opinion about... How about what Friedman interpreted? He viewed that as not undermining her credibility because she was traumatized and she may have been a little confused. After all, both the plaintiff and the complainant did get off the bus at that stop, and then while he reboarded the bus, she may have misunderstood him as following her. And when she testified to the accuracy of the criminal complaint, that criminal complaint did not include the allegation that he followed her, which only goes to show that her initial account was based on her confusion. And I'd like to go back to the point of law, Your Honor, because again, while there has been language in this Court's cases in which a witness's or a complainant's credibility is so undermined as to vitiate probable cause, the boundaries of that have never really been defined by this Court. So there's no clearly established law that shows that circumstances such as this, where you have a complainant's statements that are corroborated in large part by a video and contradicted in other parts by the video, would undermine her credibility so much as to vitiate probable cause, never mind arguable probable cause. In fact, to the extent that this Court has examined fact patterns in cases where there have been discrepancies in witness testimony, this Court has gone the other way and found that those discrepancies don't undermine probable cause. So, we've got a lot of multiple frameworks that people are putting forth or governing. And my question is going to be asking you to help me how we understand the interplay. So first is the generally applicable summary judgment standard, which requires us to look at the evidence in favor of the non-moving party. The second is the role of our jurisdiction to hear and appeal the denial of summary judgment on qualified immunity limited to the facts that the plaintiffs don't dispute. The third, and it's cutting in the opposite direction, I think, is the arguable probable cause standard, which asks us to consider whether any reasonable officer could look at the facts as Detective Friedman did and conclude that there was probable cause. So, explain to me how we are supposed to harmonize all of those and what we do first and how they all work out. So, to be able to decide what we do about the discrepancies in the surveillance video. Sure. So, it's important to recognize that here there are no material disputes of fact because all that matters is whether Detective Friedman had at least arguable probable cause based on the evidence before him. And there's no dispute about the evidence before Detective Friedman, the identifications, the surveillance video. There's only disputes about inferences that one could draw. And again, as long as any reasonable officer could find probable cause, Detective Friedman has arguable probable cause and is entitled to cause. So, maybe, but let me ask them, how do we review the surveillance footage in the light most favorable to Sakaza while at the same time applying the reasonable officer standard required to find arguable probable cause? How do we marry those? Well, as the Supreme Court has stated time and again, when there's a videotape, we have to review the evidence in light depicted by the videotape. And here, the videotape, it does not show an assault, but it also does not show that an assault did not occur. It does not disprove that. Correct. So, I'm going to talk to your counsel on the other side about the difference between exculpatory and what we're dealing with here. But like, so, you would say that the question for us to decide is how we determine the non-disputed facts, which would not include whether or not he got off or didn't get off. I followed it for three blocks. Is that right or no? I think the video does show quite clearly that he did reboard the bus and did not follow her. But, again, that was a collateral discrepancy to the sexual assault that was alleged. It's undisputed at this point that he did not follow her. Yes, that's right, Your Honor. And that her initial statement was wrong when she said that he followed her for three blocks. That's correct. But, again, there's no clearly established law that he followed  It is disputed whether she was telling the truth. Well, there were no circumstances that would undermine her. My question is, is it correct that there is a dispute as to whether she was telling the truth? I think the parties do dispute that, yes, Your Honor. And so does that matter is my follow-up question. It doesn't matter. And why not? Because all that matters is whether a reasonable officer could find, based on the undisputed evidence before Detective Friedman, and, again, there's no dispute about the evidence that he had before him, that there was probable cause to arrest. And a reasonable officer could find that, because, again, these kinds of collateral discrepancies in witness testimony, this Court has held time and again, they don't vitiate probable cause, much less arguable probable cause. And the magistrate judge – I see I'm out of time, but I'd just like to make one more quick point, if I can, Your Honor – the magistrate judge recognized that a reasonable person could find that the witness's testimony, the complaint's testimony, was not so undermined by these discrepancies as to vitiate probable cause. So the only logical conclusion there is that Detective Friedman had at least arguable probable cause, and thus is entitled to qualified immunity. Okay. So I'm sorry, just one last question before you sit down. Could the district court deny summary judgment on actual probable cause and also deny summary judgment on qualified immunity? Are you saying that the two can't coexist? For purposes of the false arrest claim, once Detective Friedman is found to have arguable probable cause, he's entitled to qualified immunity. Good morning, Your Honors. This is Chidi Ezeh. And may it please the Court, I'm the – The district court held that a reasonable jury could find that there was probable cause – a reasonable jury could find that there wasn't probable cause. But in light of that conclusion, why shouldn't we hold that a police officer, a reasonable police officer, could also have found probable cause? And if that's the case, isn't there qualified immunity? Your Honor, that's standard. It's two different standards, Your Honor. One is for granting summary judgment, and the other is for denial of summary judgment. There's a big difference between reasonable police officer and a reasonable jury. In every case that goes to the jury – So you're saying it's possible that a reasonable jury could find probable cause, but that no reasonable police officer could have found probable cause? That seems inconsistent to me. No, Your Honor. There's – the standard for denying summary judgment motion usually will be that a reasonable jury might differ. So if you don't have a situation where a reasonable jury might differ, you might as well just grant summary judgment. The only way cases come before jury is because the judge believes there might be difference of opinion within the jurors. So it's a confliction of – it's – it's conflicting those two standards. There's no point here. But the standard is on qualified immunity is – there is qualified immunity if any reasonable police officer could have believed that probable cause existed. Do you agree with that? I agree with that. Okay. And here, in light of the video, which while contradictory in many ways, was also supporting her story in many ways. It showed that he followed her to the middle of the bus, that she was – seemed to be troubled by something, that another passenger invited her to sit down and comforted her. She was crying. She was so troubled she took a photo of him. She was so troubled she called the police right away. She identified him in a photo array. She identified him in a lineup. Why – why isn't that arguable probable cause? Your Honor, I don't know what's – what made her so emotional in the video, but you can see the video clearly. The – But even if she's mistaken, a police officer looking at this, a reasonable police officer could say, hey, she's so troubled, she took a photo of him, she was crying, another passenger was comforting her, and therefore, maybe she's telling the truth or she believes she's telling the truth? No, Your Honor. I respectfully disagree because the video evidence was reviewed like two, three weeks before the arrest. And in the video evidence, you can see both hands are occupied. The right – the left hand is holding the rail, the right hand is holding the white bag. And even if they came close to each other, the police officer testified. He didn't see no crime in the video. So if she – if he did not see a crime in the video, first she told you he pulled down – he pulled down her pants, he touched her private part. Basically, you saw in the video that no such thing occurred. Why would you want to arrest when the evidence – the clearest evidence that you have is saying to you that absolutely nothing? Is there a difference between the video establishing that a crime occurred and a video that is exculpatory, saying that a crime did not occur? And how are we supposed to understand the legal significance of that? Your Honor, I don't know exactly how to answer that question because I don't really understand the question very well. But the video is absolutely exculpatory. It's clear that the video shows the – So there – aren't there some things in there that are inculpatory? I don't see – that's why I don't see – the district judge did not say – What about the district court judge that said, well, we're not saying assault didn't occur? The district court judge even didn't think it was exculpatory. Would you disagree with that? He left it to the jury. He didn't say nothing. He didn't say anything that could have been interpreted as being not exculpatory. I read the decision – We're not saying a crime didn't occur? I think that was the rule? And he's also saying – and he was also saying that I didn't think – I don't see any crime here. But that's not – that doesn't mean that it may have or it may not have. I'll leave that to the jury. He never said he saw anything. I'm sorry. Did I cut off your question? No. Okay. So if we find – just for a minute – if we find that Detective Friedman had an arguable probable cause to arrest and prosecute Mr. Sekaza, is there any reason why – any other reason that you can think of why Detective Friedman should not be granted qualified immunity on 1983? Because this is a different – this particular case, the facts of this case are completely different from other cases. This is a case where you have video evidence. You reviewed video evidence. You cannot be given the – But like a lot of videos, the video is not conclusive. And even the – even the district court recognized that it's not conclusive. Well, in my view – I saw this video a million times. It's absolutely – it was absolutely conclusive in my view. Did the – did the district court decide that this was completely clear, or did the district court say there's some ambiguity here in the video? He didn't – I don't – I didn't see no – the word ambiguity did not come up in the decision, the other. Did the district court acknowledge that there were some parts of the video that corroborated the complainant's story? The only part where the district court made mention of any such thing was when they moved from the front of the bus, when they let other passengers in, and they went to the back of the bus or somewhere in the middle of the bus. That's the only time that the district – that's the only time that the district court said her story corroborated because they moved backwards. Did the district court acknowledge that she appeared to be crying on the video? Well, that – I saw that, too. You're right. But I don't – I don't know why, because the video was clear. There was no contact. Absolutely no contact in the video. And the issue here is – Okay. Well, we have a couple of things, and I just want to make sure that we have enough to decide what we need. So one is your argument that there was some aspects of the video that proved that the complaining witness and victim was mistaken, at the very least, about some things. And that, I think, is he got off and followed her. Is that correct? No, it's more than that, Your Honor. Okay. So tell me. She said he pulled her pants down. It's in the criminal complaint. He grabbed her and pulled her pants down. She said he put his hand in her private part. It's all in the criminal complaint. None of those happened. Absolutely no contact. No bodily contact. So everything she said – she said when they first got in front of the bus, and when they were in front of the bus, he touched her. The district court saw that he was facing completely opposite her. No contact, no conversation. She was facing – she was right behind him, so he couldn't touch her if she was behind him. And the district court made – acknowledged that part. That's a lie. That was – you know, that was a lie, too. Nothing corroborated. Everything she said, it's not just limited to what can – So she was a 15-year-old who appeared to be in distress. Could a reasonable police officer have said, yeah, there are some inconsistencies here, but she was traumatized? This was – this was not just inconsistency. It's a major – because the video is clear, he did not make contact with her. His right hand had a bag. His left hand was holding the rail. Absolutely no contact. No contact, Your Honor. No more. Absolutely no – I would argue there's no dispute, but, you know, because we also made a summary of the motions for – for, you know. Right, and the district court denied your motion as well. It did. That's why we also argued that we don't see no material dispute, you know. So – and in this case, the detective himself admitted that I didn't see nothing here incriminatory, but I'll just have to arrest anyway. I don't know why he did that. So the standard here, Your Honor, is that when it has to do – when it comes to factual dispute, factual determination is a necessary – if factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and the appeal is dismissed. That's the standard that I understand, but it's – in this court. I may be – I may be wrong, but there's a case law to that affair which I cited in my paper. I have no further – if you have any questions for me, Your Honor, I'll be able to take your questions. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honors. In the video, which Your Honors can watch for yourselves, in the crucial one minute of the video, it's incorrect to say that it shows no contact. The plaintiff is standing right behind the complainant. While he is holding a bag in his hand, you can't see his hand for that entire minute. You also can't see her entire body. This is a crowded bus. At the very most, the video is inconclusive, and it does not undermine the witness's state – the complainant's statement. Excuse me. This court has held time and time again that a statement from a complainant that a crime has occurred is generally enough to establish probable cause. Here, it certainly was, and the video did not undermine that in any way. So can you just help me figure out what, like, a limiting principle might be? I mean, how many discrepancies? How material? Like, how do we use video like this? Sure, Your Honor. So as I mentioned earlier, there's very few cases in which this court has found that there's enough discrepancies in a witness or complainant's statement to undermine probable cause. I think one of the few examples I found was the DeFalco v. MTA bus case that the district court cited. In that case, the police officer's investigation would have revealed that the witness didn't have a vantage point of the crime that he reported because there was a wall in the way. So that's certainly very different from the case here. In other cases where there are discrepancies, again, between what a witness says and what the subsequent investigation uncovers, like the Lefebvre case or also the Escalera case, Norwood v. Mason case, all cases we said in our brief. In all those cases, the court finds that there's either probable cause or at least So again, there's certainly no clearly established law to show that this kind of discrepancy would undermine her credibility so much as to vitiate probable cause, at least not to the extent that every reasonable officer would find that. So Detective Friedman here was entitled to qualified immunity based on at least arguable probable cause. I'd also just like to address briefly the malicious prosecution claim. So the probable cause did not dissipate after the plaintiff's arrest. In fact, it only strengthened because the complainant testified to the accuracy of the criminal complaint in a sworn statement, which provides additional indicia of its reliability. So because there continued to be probable cause, this Court should also recognize qualified immunity for Detective Friedman on the malicious prosecution claim as well. Unless you have any further questions, we would rest on our briefs. Thank you, Your Honors. Thank you. Thank you. That concludes the cases that are going to be argued.